UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:10-CV-94-RLV

| | |
|---|---|
| JOHN YORK, D.O. ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| HEALTH MANAGEMENT ASSOCIATES, ) | |
| INC. AND STATESVILLE HMA ) | |
| PHYSICIAN MANAGEMENT, LLC. ) | |
| ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. #11) and accompanying Memorandum in Support (Doc. #12), filed September 17, 2010; Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss (Doc. #13), filed October 1, 2010; and Defendants' Reply in Support of Motion to Dismiss (Doc. #14), filed October 8, 2010.

## I. BACKGROUND

Plaintiff Dr. John York ("Dr. York) is an orthopedic surgeon.[1] Compl. ¶ 2. Defendant Health Management Associates, Inc. ("HMA") is "a premier operator of acute care hospitals," for which it engages in extensive physician recruitment. *Id.* ¶ 3. HMA operates multiple facilities in North Carolina, including Davis Regional Medical Center in Statesville ("Davis Regional"). Defendant Statesville HMA Physician Management, LLC ("SHPM"), is the successor, by

---

[1] All facts are presented in the light most favorable to the Plaintiff, the party opposing the Motion to Dismiss.

1

statutory conversion in 2008, to Statesville HMA Physician Management, Inc. *Id*. ¶ 4. Plaintiff believes SHPM serves as an agent of HMA by contracting with physicians recruited by HMA to help staff HMA operated hospitals in North Carolina. *Id.*

In the fall of 2006, Dr. York maintained a solo medical practice in Scottsdale, Arizona. During that fall, he was contacted by an HMA recruiter. *Id*. ¶ 9. After a series of discussions with the CEO and COO of Davis Regional and an HMA recruiter, Dr. York agreed to close his Scottsdale practice and move to the Statesville, North Carolina to help open and develop a practice associated with Davis Regional under the name Statesville Orthopedic & Sports Medicine ("SOSM"). *Id.* ¶ 10.

Dr. York signed a Physician Employment Agreement ("Agreement"), formalizing the contract, on January 25, 2007, but the contract was not to take effect until June 1, 2007. *Id*. ¶ 11. An Addendum to the Agreement extended the effective date to July 16, 2007. *Id*.

Following the signing of the Agreement, Dr. York worked with HMA personnel to complete and submit the required paperwork for his medical license application to the North Carolina Medical Board. *Id*. ¶ 13. During the early summer of 2007, Dr. York moved his family to Statesville, North Carolina, where he worked to perform his duties under the Agreement while waiting for approval on his medical license application. These duties included setting up the SOSM office, meeting with referrals, and marketing the new practice. *Id*. ¶ 14.

Under the Agreement, Dr. York was to be paid $515,000 a year as base salary. *Id*. ¶ 15. He was also to be paid $15,000 for relocation expenses and $60,000 as a commitment bonus and to assist in the purchase of malpractice tail insurance coverage. *Id*. 17-18. None of these payments, in whole or in part, were ever made to Dr. York. *Id*. ¶ 15-18. Dr. York instead financed his coverage through an equity loan against his home in Scottsdale. *Id.* ¶ 18.

2

In August 2007, Dr. York asked an HMA employee, Mr. Phillips, why he had not been paid. Mr. Phillips informed Dr.York that no payments would be made until Dr. York received his medical license. *Id*. ¶ 19. Dr. York continued pursuing his license, but contends that the "Board, without just cause, continued to delay approval of his application." *Id*. ¶ 20.

In November 2007, "frustrated and facing financial ruin," Dr. York notified HMA that he was terminating his employment with HMA. *Id*. ¶ 21. At that time, neither Defendant notified Dr. York that he was in breach of the Agreement, nor did they pay Dr. York for his services. Dr. York filed the Complaint in this case asserting breach of contract against Defendants HMA and SHPM.

## II. Standard of Review

When deciding a motion to dismiss in a breach of contract case, the plaintiff must allege facts in the Complaint that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint will not survive a motion to dismiss where it contains "naked assertion[s] devoid of further factual enhancement." *Id.* at 557. Instead, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citations omitted). A "claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. When ruling on a motion to dismiss, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*). However, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s LLP*, 213 F.3d 175, 180 (4th Cir. 2000).

### III. Discussion

*A. Plaintiff's claim is not barred by the statute of limitations.*

The first point of contention between the parties is whether Plaintiff's breach of contract claim should be dismissed because it is barred by the statute of limitations. Defendants maintain Plaintiff's claim accrued on July 16, 2007, the day the agreement became effective. If Defendant's argument is correct, Plaintiff's claim would be barred by the three-year statute of limitations. In opposition, Plaintiff contends that the contract was not breached on the date of the agreement because payment was not expected immediately. After a thorough review of the law and the facts alleged in the Complaint, this Court agrees with Plaintiff.

Breach of contract actions in North Carolina are subject to a three-year statute of limitations. N.C. Gen. Stat. § 1-52(1) (2010). The cause of action generally accrues and the statute of limitations begins to run as soon as the right to institute and maintain a suit arises. *Reidsville v. Burton*, 152 S.E.2d 147 (N.C. 1967). Put another way, the statute begins to run on the day the promise is broken and in no circumstances does the statute of limitations begin to run before the plaintiff has the right to bring the action. *Penley v. Penley*, 332 S.E.2d 51, 62 (N.C. 1985) (citations omitted).

A contract is breached at the time of notice of the breach. *Henlajon, Inc. v. Branch Highways, Inc.* 560 S.E.2d 598, 603 (N.C. Ct. App. 2002) (holding that a contract was breached when plaintiff received a letter from defendant denying existence of a contract and notifying plaintiff of defendant's intent not to perform). In this case, Plaintiff had no notice of the breach on the effective date of the Agreement because it was not the date when the Defendant was expected to perform. The Agreement specified that Plaintiff's salary would be "payable in line

4

with [HMA's] normal pay practices." Ex. A. Thus, the promise to pay Plaintiff's salary was not breached at the moment the agreement was made. Instead of the effective date, the earliest the Agreement could have been breached was HMA's next payday following the effective date of the agreement. It is also plausible that payment of the relocation and commitment bonus was in line with HMA's payment practices and were not expected at the moment of the effective date of the Agreement. Plaintiff did not have notice of a breach of the Agreement on the day the Agreement became effective.[2] Therefore, Plaintiff did not have a right of action on that date. Accordingly, Plaintiff's claim is not barred by the statute of limitations.

> *B. The requirement that Plaintiff obtain a North Carolina medical license was not a pre-condition to the agreement.*

The next matter at issue between the parties is whether Plaintiff's breach of contract claim should be dismissed because Plaintiff failed to abide by a condition precedent in the Agreement. Plaintiff contends that the Agreement did not specify that he first receive a North Carolina license as a condition precedent and that because no time period was specified, he had a reasonable amount of time to acquire the license. Defendants argue that Plaintiff's obtaining a medical license was a condition precedent and Plaintiff was not entitled to any compensation under the Agreement until the condition was met. After review of the law and parties' arguments, this Court agrees with Plaintiff.

To support their analysis of the existence of a condition precedent, Defendants rely on the Restatement of Contracts, which does not require any particular language to create a

---

[2] Plaintiff does not suggest an alternative day of breach, however, the facts of the Complaint suggest that Plaintiff was not aware of Defendants' breach until August 2007 when Mr. Phillips informed Dr. York that no payments would be made until Dr. York received his medical license. Since Plaintiff filed the Complaint on July 22, 2010, less than three years after the breach, Plaintiff's claim is timely.

5

condition. Restatement (Second) of Contracts § 226 cmt. a. (1981). Therefore, Defendants conclude that Plaintiff's agreement to comply with the "terms and conditions" of the Agreement is sufficient language to transform Plaintiff's obligation to obtain a license into a condition precedent. However, Defendants' conclusion conflicts with North Carolina law.

In North Carolina, "conditions precedent are not favored by the law." *Harris v. Stewart*, 666 S.E.2d 804, 808 (2008) (citing *Craftique, Inc. v. Stevens and Co.*, *Inc.* 364 S.E.2d 129, 131 (1988)). "As such, the provisions of a contract will not be construed as conditions precedent in the absence of language clearly requiring such construction." *Harris*, 666 S.E.2d 804, 808 (citing *In re Foreclosure of Goforth Properties, Inc.*, 432 S.E.2d 855, 859 (1993). Where a contract does not specify any deadline for meeting an obligation in a contract, the law allows a reasonable amount of time for the obligation to be completed. *See*, *e.g.*, *Austin v. Brown* 132 S.E. 661, 664 (1926) (holding that where a contract was silent on the time limit for removal of lumber, the law implies a reasonable time to remove the lumber). In this case, the agreement did not specify any deadline or time limitation for Plaintiff to obtain his license, giving Plaintiff a reasonable amount of time to be licensed. Instead of creating a condition precedent, the agreement creates a covenant for Plaintiff to obtain a license, with the implication that it must be done within a reasonable period of time to avoid a breach of contract.

Despite the absence of clear language creating a condition precedent, Defendants continue to argue that the only reasonable reading of the Agreement requires Plaintiff to obtain a North Carolina medical license as a condition precedent. Defendants base this analysis on the theory that any other reading of the agreement would render the contract void because it is illegal to practice medicine in North Carolina without first receiving a license from the state. In opposition to Defendants' argument, Plaintiff contends that the Agreement specified that Dr.

York would undertake duties outside of the North Carolina statutory definition of the "practice of medicine" and that he should be compensated for this work.

Although Defendants are correct in their statement that it is illegal to practice medicine in the state of North Carolina without a North Carolina state license, Plaintiff's analysis more accurately characterizes the duties designated to him under the agreement. The agreement specified that Plaintiff's employment responsibilities would extend beyond the statutory scope of practicing medicine. North Carolina's definition of the "practice of medicine" includes:

> a. Advertising, holding out to the public, or representing in any manner that the individual is authorized to practice medicine in this State.
> b. Offering or undertaking to prescribe, order, give, or administer any drug or medicine for the use of any other individual.
> c. Offering or undertaking to prevent or diagnose, correct, prescribe for, administer to, or treat in any manner or by any means, methods, or devices any disease, illness, pain, wound, fracture, infirmity, defect, or abnormal physical or mental condition of any individual, including the management of pregnancy or parturition.
> d. Offering or undertaking to perform any surgical operation on any individual.
> e. Using the designation "Doctor," "Doctor of Medicine," "Doctor of Osteopathy," "Doctor of Osteopathic Medicine," "Physician," "Surgeon," "Physician and Surgeon," "Dr.," "M.D.," "D.O.," or any combination thereof in the conduct of any occupation or profession pertaining to the prevention, diagnosis, or treatment of human disease or condition, unless the designation additionally contains the description of or reference to another branch of the healing arts for which the individual holds a valid license in this State or the use of the designation "Doctor" or "Physician" is otherwise specifically permitted by law.
> f. The performance of any act, within or without this State, described in this subdivision by use of any electronic or other means, including the Internet or telephone.

N.C. Gen. Stat. § 90-1.1(5)

Defendants' assertion that Plaintiff's lack of license made the agreement void due to illegality ignores that fact that the agreement requires Plaintiff to be employed in work outside the scope of North Carolina's definition of the "practice of medicine." Plaintiff was also hired to "do all other things reasonably in [his] power to promote, develop, and extend the business of us,

7

the Practice, and the Hospital." Agreement § 3.1.5. He was also expected to "participate in [HMA's] or the Hospital's community outreach programs." *Id.* § 3.1.4. During the period between the effective date of the agreement and November 2007, when Plaintiff terminated the agreement, he engaged in these required activities. Plaintiff worked for Defendants setting up, promoting, and developing the new practice.[3] As an employee of SHPM, these items were clearly within his duties. SHPM allowed Plaintiff to undertake this work, creating the assumption that he would be paid during this time. Therefore, because the agreement required Plaintiff to engage in activities outside the "practice of medicine," obtaining a license need not be read as a condition precedent to the agreement. As such, Plaintiff's complaint states a claim for breach of contract sufficient to survive the Motion to Dismiss.

*C. It is plausible from the face of the Complaint that SHPM was acting as an agent of HMA.*

The final point of contention between the parties is whether SHPM was acting as an agent of HMA in the formation of the Agreement. Plaintiff argues that the circumstances surrounding SHPM and HMA's relationship indicates SHPM was acting as HMA's agent, while Defendants maintain that Plaintiff has failed to assert any facts suggesting evidence of agency.

"An agent is one who, by the authority of another, undertakes to transact some business or manage some affairs on account of such other, and to render an account of it. He is a substitute, or deputy, appointed by his principal primarily to bring about business relations between the latter and third persons." *SNML Corp. v. Bank*, 254 S.E.2d 274, 279 (N.C. Ct. App.

---

[3] The Complaint does not specify whether Plaintiff was holding himself out as licensed to practice medicine as prohibited by North Carolina law. Regardless of whether or not Plaintiff engaged in illegal behavior, the contract contemplated behavior outside the bounds of the statutory definition of "practice medicine" and inside the realm of legality.

8

1979). Reading the Complaint in the light most favorable to the Plaintiff, this Court finds the facts indicative of an agency relationship.

Plaintiff contends that the Complaint alleges an agency relationship based on the fact that SHPM was the entity used by HMA to contract with physicians such as Dr. York who were to practice at Davis Regional Medical Center. Furthermore, HMA and SHPM share an identical business address as their principal place of business. Although "SHPM" was named as the "Employer" in the agreement, the agreement was signed by James A. Barber, who identified himself as "Senior Vice President," the office he then held at HMA. HMA's General Counsel, Timothy R. Parry, also signed the Agreement. Taking the facts in Plaintiff's Complaint as true, SHPM had the authority to act on behalf of HMA in recruiting Plaintiff and in the formation of the Agreement. Because Plaintiff has sufficiently pleaded the existence of an agency relationship, HMA will not be dismissed as a defendant.

### III. CONCLUSION

**THEREFORE, IT IS HEREBY ORDERED** that:

(1) Defendants' Motion to Dismiss (Doc. #11) is **DENIED**.

Signed: August 19, 2011

Richard L. Voorhees
United States District Judge